**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* C.Z., C.D., A.D., L.D., and Z.D.

No. 19-1179 (Nicholas County 19-JA-83, 19-JA-85, 19-JA-86, 19-JA-87, 19-JA-88)

## MEMORANDUM DECISION

Petitioner Father A.D., by counsel Harley E. Stollings, appeals the Circuit Court of Nicholas County's November 21, 2019, order terminating his parental rights to C.Z., C.D., A.D., L.D., and Z.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), John C. Anderson II, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court made erroneous findings, erred in denying him an improvement period, and erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the outset we note that petitioner has an extensive history of Child Protective Services ("CPS") involvement dating back to 2006. Services were provided to petitioner to help address issues with child safety and deplorable home conditions. Services were again offered in 2012 for approximately one year after an incident involving a knife and two of the children, who were then two and three years old. Then, in 2016, services were again offered after then one-year-old Z.D. suffered a skull fracture. In 2017, the first child abuse and neglect petition was filed against petitioner in the circuit court alleging drug abuse and deplorable home conditions. The circuit court granted petitioner a post-adjudicatory improvement period, which he successfully completed. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

2017 petition was ultimately dismissed, and the children were returned to petitioner's care at the beginning of 2019.

The DHHR filed the instant child abuse and neglect petition against petitioner in July of 2019 due to allegations of drug abuse, lack of supervision, and deplorable home conditions. Specifically, the DHHR alleged that some of the children were observed playing in the street unsupervised, during which time one child was clipped on the shoulder by the mirror of a passing car. Additionally, a CPS worker observed the home to be in disarray with clothing and trash covering the floor and blocking any visible walkways. Dirty diapers were also found on the floor. Lastly, the DHHR alleged that petitioner refused to participate in drug screens and that the children made disclosures that petitioner abused drugs.

The circuit court held an adjudicatory hearing in September of 2019. Petitioner stipulated to the allegations contained in the petition and requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation and adjudicated him as an abusing parent but denied petitioner's motion for a post-adjudicatory improvement period.

In November of 2019, the circuit court held a dispositional hearing, during which it took judicial notice of the prior child abuse and neglect proceedings. The circuit court also heard testimony presented by the DHHR and petitioner. At the close of evidence, the circuit court found that petitioner had exhibited issues with child safety and deplorable home conditions since 2006. While petitioner testified that he was building a fence around the home's perimeter to keep the children out of the road and was making efforts to clean the home, the circuit court determined that the efforts were "the very definition of too little, too late." Indeed, services had been provided for those exact issues four separate times over a period of more than ten years. According to the circuit court, the DHHR exhausted significant resources attempting to assist petitioner, but "[n]othing has helped in any lasting way." Although petitioner showed compliance with services during the 2017 case and "some compliance" with services in the present case, the circuit court found that the "partial compliance" was "outweighed by the repeated pattern" of petitioner's failure to correct the home's unsafe and filthy conditions. In fact, petitioner's pattern of behavior led the circuit court to conclude that petitioner did not have the ability to change his circumstances or to care for the children in any appropriate or consistent manner. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Petitioner appeals the November 21, 2019, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[2]The mother's parental rights were also terminated below. The permanency plan for the children is adoption by their foster family.

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner assigns as error several factual findings, or lack thereof, made by the circuit court that he contends are an abuse of discretion. Petitioner first contends that the circuit court erred in finding that "the allegations in the 2017 case are almost identical to the allegations in the 2019 present case." According to petitioner, this finding was erroneous given that the 2017 case surrounded drug abuse while the 2019 case dealt with issues of child safety and deplorable home conditions. However, we note that the 2017 case was not solely based upon allegations of drug abuse. The 2017 petition also included allegations that petitioner did "not have safe and suitable housing" and that the home was in "deplorable condition." Moreover, the record is clear that petitioner was provided services on four separate occasions in 2006, 2012, 2016, and 2017, based upon issues with child safety and deplorable home conditions. Accordingly, we find that the circuit court did not err in finding that the allegations contained in the instant petition were nearly identical to the conditions from the 2017 case.

Petitioner also contends that the circuit court erred in refusing to find that he has the mental capacity to learn to be an appropriate parent. Petitioner claims that he presented the testimony of a psychiatric nurse practitioner who opined that petitioner was appropriately motivated to regain custody of his children and had the mental capacity to properly learn to care for his children.[3] However, the record shows that the nurse practitioner met with petitioner on only two occasions and did not perform any evaluations on or testing of petitioner. To the extent that petitioner claims that the DHHR did not present evidence to rebut the nurse practitioner's testimony, we note that the circuit court heard this testimony and made this credibility determination for itself. We decline to disturb such determinations on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.") Given the evidence presented, the circuit court found that the nurse practitioner's testimony was not credible and, instead, relied on

---

[3]As part of his argument, petitioner seems to contend that the circuit court erroneously shifted the burden to petitioner to prove that he was entitled to an improvement period. However, we remind petitioner that "it is clear that West Virginia Code § 49-4-610(2)(B) places the burden squarely on a parent to establish, by clear and convincing evidence 'that the [parent] is likely to fully participate' in order to obtain a post-adjudicatory improvement period." *In re E.C.*, No. 19-0834, 2020 WL 2043399, at * 4 n.5 (W. Va. Apr. 28, 2020)(memorandum decision). Therefore, it was petitioner's burden to prove that he was entitled to an improvement period and the DHHR was not required to present evidence in that regard.

petitioner's repeated return to abusive behavior despite the provision of services in finding that he did not have the ability to change his circumstances or care for the children. Moreover, the circuit court did not make any specific findings regarding petitioner's mental capacity, but rather, determined that petitioner was generally unable or unwilling to change his circumstances or care for the children in any appropriate or consistent manner. Accordingly, we find no abuse of discretion in the circuit court's finding.

Petitioner next argues that the circuit court erred in refusing to find that he was appropriately motivated to regain custody of his children. Petitioner contends that he regularly cooperated with service providers and further notes that the caseworker conceded that he could comply with services while under supervision. However, contrary to petitioner's claims, the caseworker also concluded that petitioner would abuse the children again without supervision. While petitioner argues that he was motivated to regain custody of his children, the record indicates that he was provided services over the course of several years but was never able to consistently maintain progress in his parental improvement without intervention and oversight. Moreover, the circuit court heard the testimony of the caseworker and petitioner before determining that petitioner did not demonstrate that he was entitled to an improvement period. As noted above, we will not review the circuit court's credibility determination. *Id.* Therefore, we find no error.

Petitioner's remaining assignments of error relate to his contention that the circuit court erred in terminating his parental rights without first granting him a post-adjudicatory improvement period. According to petitioner, he should have been granted an improvement period because "the record reflect[s] that [petitioner's] home was clean and safe, that he works regularly, is drug free, and [is] well-motivated to have his children returned." In further support, petitioner contends that his CPS caseworker testified that he can comply with the terms of an improvement period and function as a parent while under supervision. However, in contrast, petitioner also claims that the caseworker erroneously concluded that he will neglect the children again without the DHHR's supervision, claiming that she "barely knows" him. Petitioner notes that he successfully completed his improvement period in the 2017 case and that "[t]here is every reason to believe he will continue to improve as a person and parent if granted an improvement period." Based on this evidence, petitioner also contends that the circuit court erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future, in finding that there were no less-restrictive alternatives to the termination of his parental rights, and in terminating his parental rights. Upon our review, we find that petitioner is entitled to no relief.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). West Virginia Code § 49-4-610(2)(A) and (B) provides that a circuit court may grant a post-adjudicatory improvement period when a parent (1) requests an improvement period in writing and (2) demonstrates by clear and convincing evidence that he or she is likely to fully participate in the improvement period.

Here, the evidence demonstrates that petitioner was not likely to fully participate in an improvement period. Petitioner has been provided services off-and-on over the course of nearly fourteen years. While petitioner can comply for a short period of time under supervision, his history demonstrates that he is either unable or unwilling to make long-lasting changes. For example, petitioner was granted an improvement period in the 2017 proceedings and sufficiently complied such that the children were returned to his care. However, approximately five months later, a child abuse and neglect petition was filed against him for the same issues he had been dealing with since 2006—child safety and deplorable home conditions. Additionally, while petitioner testified that he was placing a fence around his yard and cleaning his home, the circuit court found that those attempts were "too late" given the years of extensive services provided to petitioner to address those conditions. Lastly, although petitioner claims that he was employed and testing negative for drugs as of the dispositional hearing, he fails to cite to any portion of the record demonstrating such. Based on the foregoing, it is clear that petitioner failed to demonstrate that he was likely to fully participate in an improvement period and we find no error in the circuit court's decision to deny him the same.

The evidence set forth above likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[4] provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Petitioner has been offered services to address his abusive and neglectful actions over the course of more than ten years but has been unable or unwilling to make any long-lasting changes to his behavior. Petitioner has a history of minimally complying with services until the DHHR's supervision is lifted, only to revert to his prior actions. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). While petitioner contends that he was able to comply with services in the 2017 case and during the underlying proceedings, the circuit court determined that he demonstrated only "partial" compliance and was unable to truly change his behavior and parent the children. Moreover, the circuit court concluded that the children needed stability that petitioner was unable to provide. Specifically, L.D. and Z.D., then ages four and two, respectively, had been removed from the home twice before and the circuit court determined that they would likely be removed again if they were returned to petitioner's care. According to the circuit court, the children deserve a safe and stable environment, and petitioner has been unable to provide that since 2006, "even with the substantial assistance of the [DHHR]." As such, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. To the

---

[4]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

extent petitioner argues that there was a less-restrictive alternative to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 21, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison